MABEL L. HOLMES, as Executrix of THEODORE L. HOLMES, Deceased, et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 29801.)

Court of Claims, December 30, 1952.

10

*Lewis B. Parmerton* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Douglas S. Rider* of counsel), for defendant.

LAMBIASE, J. This claim was filed to recover damages allegedly resulting from the appropriation, for the purposes of a grade crossing elimination project, of a perpetual easement in .004 of an acre of land belonging to claimants in the village of Owego, county of Tioga, New York.

It was tried before us and by our decision filed in the office of the clerk of this court we found that claimants had been damaged in the sum of $100 by reason of the appropriation, and we found further that claimants were entitled to no other damages. Judgment was duly entered in the office of the clerk of this court in accordance with said decision on the 14th day of September, 1951.

On appeal to the Appellate Division of the Supreme Court, Third Department, that court, having handed down its decision on March 12, 1952, and its amended decision on March 20, 1952 (279 App. Div. 489, 958) by an order entered in the clerk's office

thereof on March 23, 1952, provided as follows: " ORDERED AND ADJUDGED, that the judgment so appealed from be and the same hereby is unanimously reversed on the law and facts, with costs to the appellants, and a new trial directed on the issue of whether other and suitable means of ingress and egress to appellants' feed mill existed after the closing of the westerly end of Erie Street extension, and whether claimants are entitled to consequential damages in connection therewith;" and further " ORDERED, that the 26th, 28th, 30th and 31st Findings of Fact, and the 2nd Conclusion of Law in the decision of the Court of Claims be reversed, and that Finding of Fact No. 24 in the decision of the Court of Claims be modified by eliminating the last sentence thereof." Judgment was entered in the Court of Claims carrying out the direction of the Appellate Division.

Thereafter and on May 1, 1952, and after the afore-mentioned judgment carrying out the direction of the Appellate Division had been entered, Theodore L. Holmes, one of the claimants, died. The retrial of " the issue of whether other and suitable means of ingress and egress to appellants' feed mill existed after the closing of the westerly end of Erie Street extension, and whether claimants are entitled to consequential damages in connection therewith " was duly brought on before us on June 12, 1952, at which time Mabel L. Holmes, executrix under the last will and testament of Theodore L. Holmes, was duly substituted in the place and stead of the deceased claimant, Theodore L. Holmes.

Upon the retrial before us, it was duly stipulated that:

A. " The Appellate Division, Third Department, having held that the finding of this court made in its decision dated August 30th, 1951, to the effect that claimants were not cut off from all other suitable means of ingress and egress by the closing of Erie Street Extension, is against the weight of evidence, and having reversed the judgment entered upon said decision and having ordered a new trial on the issue of whether other and suitable means of ingress and egress to appellants' feed mill existed after the closing of the westerly end of Erie Street Extension and whether claimants are entitled to consequential damages by reason thereof, it is stipulated that the purpose of the taking of further testimony today is solely in connection with said issue, as directed by the Appellate Division, and none other." (Retrial S. M. 2.)

B. " the record of the previous trial and the exhibits, and all the exhibits, introduced into evidence and forming a part thereof may be used by the Court in deciding the foregoing issue."

" And shall be considered with the same force and effect as if separately introduced." " And * * * that this record shall be considered only on the issue on which the new trial has been directed by the Appellate Division." (Retrial S. M. 3.)

C. " the original exhibits having been lost, that copies thereof may be submitted to the Court and used by the Court with the same force and effect as if the original exhibits had been submitted to the said Court." (Retrial, S. M. 3.)

D. " that Mabel L. Holmes, as executrix under the last will and testament of Theodore L. Holmes, be and she is hereby substituted as one of the claimants herein in the place of Theodore L. Holmes, and that the title of the action be amended accordingly." (Retrial S. M. 37.)

We have before us now for consideration upon the issue returned to us by the Appellate Division for retrial a record which consists of the record on the first trial, insofar as it affects the issue before us (Stipulation " B " *supra*), which record was before the Appellate Division on the appeal, and also the record on the retrial of said issue. To aid us also in arriving at our conclusion herein, accompanied by claimants' attorney and by a representative of the State of New York, we again viewed, following the retrial, the appropriated premises and the premises of which the appropriated land prior to the appropriation was a part. We have concluded from all of the foregoing that the evidence before us on the issue of " whether other and suitable means of ingress and egress to appellants' feed mill existed after the closing of the westerly end of Erie Street extension, and whether claimants are entitled to consequential damages in connection therewith " is substantially the same as it was on the previous trial.

In its opinion (FOSTER, P. J., concurred in by a unanimous court, p. 492), the conclusion is reached by the Appellate Division that our finding " to the effect that claimants were not cut off from all other suitable means of ingress and egress is against the weight of evidence." And while we are aware that it is the order of the Appellate Division reversing the judgment upon questions of fact as well as upon questions of law, and setting forth the findings of fact and the conclusion of law reversed, and the finding of fact modified, and directing the new trial upon the issue therein specifically set forth which has determined the scope of such new trial, and although in accordance with said order the retrial of the issue returned to us was presented to and considered by us *de novo* as though it had never been heard before, we have borne in mind the aforesaid conclusion of the

Appellate Division as we have borne in mind all other competent considerations with reference to and bearing upon said issue; and we have also borne in mind the stipulations of the parties hereinbefore set forth in arriving at our determination herein. However, in formulating our findings of fact and conclusions of law hereinafter specifically set forth, we have been controlled by our own final convictions on the evidence with reference thereto.

Upon the retrial we reserved decision on a motion made by claimant (S. M. 32) to strike out certain testimony on the ground that it was too remote although we did indicate at the time that we were of the opinion that the motion should be granted. Therefore, as indicated upon the retrial, said motion should be and hereby is granted, and the testimony referred to therein is stricken out.

We set forth our decision upon the issue returned to us in separately numbered findings of fact and conclusions of law italicized for the purpose of distinguishing them, and we have integrated the said italicized findings of fact and conclusions of law with the other findings of fact and conclusions of law contained in our decision dated August 30, 1951, which were not reversed or modified, or concerning the subject matter of which the Appellate Division made no new findings of fact, our decision herein being in compliance with the order of reversal and with the stipulations of the parties.

### Findings of Fact

1. That the claim of the claimants has been duly filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination.

2. That the claimants were at the time of the appropriation copartners doing business under the firm name and style of Holmes and Relyea, operating a feed mill, manufacturing feed and selling feed, seed, fertilizer and farm supplies at wholesale and retail.

3. That on June 25, 1947, pursuant to chapter 678 of the Laws of 1928 and acts amendatory thereof and supplemental thereto, the State of New York in connection with grade crossing elimination of Erie Railroad (Susquehanna Division) with Owego-Candor Part I S. H. No. 5420 (North Avenue), Paige Street, McMaster Street, East Temple Street and Greene Street in the village of Owego, New York, appropriated a perpetual easement for the purpose of constructing, reconstructing and maintaining

thereon slopes, in and to all that piece or parcel of land hereinafter designated as parcel No. 23, situated in the village of Owego, County of Tioga, State of New York, described as follows:

" *Parcel No. 23*

" Beginning at a point in the southerly line of East Avenue, at its intersection with the dividing line between lands of Holmes and Watkins (reputed owners) on the east and lands of E. H. Miller Lumber Company, Inc. (reputed owner) on the west;

" (1) Thence easterly along said southerly line of East Avenue, a distance of fifty (50) feet to a point;

" (2) Thence westerly through lands of Holmes and Watkins (reputed owners) a distance of forty-eight (48) feet more or less to a point in the aforementioned dividing line between lands of Holmes and Watkins (reputed Owners) on the east and lands of E. H. Miller Lumber Company, Inc., (reputed owner) on the west;

" (3) And thence northerly along said dividing line, a distance of seven (7) feet to the point or place of beginning;

" Containing four thousandths (0.004) of an acre more or less.

" All bearings referred to magnetic north as magnetic needle pointed in 1933 A.D."

4. That on June 25, 1947, and prior thereto, claimants were the owners of the appropriated property in Finding of Fact No. 3 subject to an outstanding inchoate right of dower in one Mabel L. Holmes, wife of one, Theodore L. Holmes.

5. That by general release dated December 18, 1950, said Mabel L. Holmes released to the State of New York all the matters therein set forth which she, her " heirs, executors or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents, and more particularly all the interest that I may have in any land appropriated by the State of New York from premises conveyed to my husband, Theodore L. Holmes, and Pearne N. Watkins, by deed dated Oct. 1, 1927 and recorded in Tioga County Clerk's Office Oct. 11, 1927 in Book 191 of Deeds at page 533, and for any damages resulting to the premises caused by said appropriation or otherwise by reason of any dower interest that I may have in said premises " (Exhibit No. 24).

6. That the parcel appropriated herein is part of lands more particularly described as follows: " all that tract or parcel of

land situate in the village of Owego, County of Tioga, State of New York, bounded and described as follows: Beginning at the point of intersection of West Avenue with the northerly edge of the lands of the Erie Railroad Company, and running thence westerly along the northerly edge of said lands of the Erie Railroad Company to a limit point on said edge, situate 87 feet easterly from the point of intersection of said edge of the lands of the Erie Railroad Company with the easterly edge of the sidewalk situate on the easterly side of North Avenue, and running thence northerly from said limit point in a direction at right angles to said edge of the lands of the Erie Railroad Company to West Avenue, and running thence easterly along the southerly edge of said West Avenue to the point of beginning.'' (S. M. 205–206.)

7. That claimants are the owners of the premises described in the immediately foregoing Finding of Fact, subject to the inchoate right of dower of one Mabel L. Holmes, wife of Theodore L. Holmes, as to so much of said property as was at one time owned by her husband, except as to so much thereof as has been released by said Mabel L. Holmes by her release to the State of New York. (Exhibit 24, Finding of Fact No. 5.)

8. That the land described in Finding of Fact No. 3 at the time of the appropriation was triangular in shape, and its west line was about eighty-four feet east of the east line of North Avenue. It was bounded southerly by Erie Street Extension, so-called, westerly by property purportedly owned by E. H. Miller Lumber Co., Inc. and northeasterly by West Avenue.

(*Reference to " Finding of Fact No. 3 " should be reference to Finding of Fact No. 6.*)

9. That North Avenue runs in a general northerly and southerly direction; that West Avenue runs in a general northwesterly and southeasterly direction; and that Erie Street and the extension thereof known as Erie Street Extension runs in a general easterly and westerly direction.

10. That the extension of Erie Street upon which claimants' premises abut, West Avenue and North Avenue, were at the time of the appropriation herein and for many years prior thereto had been, public streets in the village of Owego, New York.

11. That prior to the appropriation herein and prior to the elimination of the grade crossing on North Avenue, Erie Street Extension formed a " T " intersection with North Avenue at a point about eighty-four feet west of the west line of claimants' premises.

12. That prior to the appropriation herein and prior to the elimination of the grade crossing on North Avenue, Delphine Street formed a " T " intersection with and on the west side of North Avenue at a point thereon to the south of the aforesaid intersection of North Avenue with Erie Street Extension.

13. That the paved portion of North Avenue at the time of the appropriation was and had been for some time prior thereto of the width of twenty-two feet, and that during all such times it had been and was a part of State Highway No. 5420 and maintained as such by the State of New York.

14. That on June 25, 1947, there was and for some time prior thereto there had been a building on the premises described in Finding of Fact No. 6 which was used by claimants in connection with the feed mill business maintained and operated by them on said premises.

15. That the building mentioned in Finding of Fact No. 14 faced on Erie Street Extension, and merchandise was received and delivered from the side facing Erie Street Extension. That there was a railroad siding on Erie Street Extension immediately south of claimants' premises which was used by claimants in connection with their feed mill business.

16. That at the time of the appropriation, claimants were and for some time prior thereto had been licensed weighmasters, conducting such business on the premises mentioned in Finding of Fact No. 6 in connection with their feed mill business.

17. That claimants on June 25, 1947, were using and for some time prior thereto had used for the storing of inflammable materials used in connection with their feed mill business a concrete storage building on Delphine Street, which street is located a short distance westerly of claimants' feed mill.

18. That there is insufficient evidence in the record upon which a finding can be made of title in the claimants of said storage building.

19. That to get to the concrete storage building on Delphine Street, claimants and their employees, together with their customers, crossed North Avenue; that trips to said storage building were thus made several times daily.

20. That on and prior to June 25, 1947, claimants' land on the northwest side thereof was below the grade of West Avenue a distance varying up to nine and one-half feet, and that at the point of the appropriation it was eight and one-half feet below said grade.

21. That the elimination of said grade crossing at North Avenue is being accomplished by the construction of an under-

pass which commences a large city block southerly of the railroad tracks at Fox Street and terminates northerly on West Avenue. That said underpass as it goes under the railroad tracks and passes Erie Street Extension and Delphine Street is sixteen feet below the former grade of North Avenue.

22. That at the southwesterly corner of Erie Street Extension where it adjoins North Avenue, there has been constructed a stairway leading from the level of North Avenue as established after the elimination of the North Avenue grade crossing to the level of Erie Street Extension, all of which stairway and stair well forming part thereof is within the lines of North Avenue as they existed prior to said elimination, except for a slight portion thereof which extends into the bed of Erie Street Extension as indicated on Exhibit H. (See, also, S. M. 289, 290.)

23. That after completion of the entire grade crossing elimination involved herein, the crossings at McMaster Street, Paige Street, East Temple Street, and Greene Street will be closed to vehicular traffic.

24. *That Erie Street Extension has been closed by the grade crossing elimination on North Avenue at its westerly end where it made a " T " intersection with North Avenue before the elimination of said grade crossing.*

25. That Delphine Street has been closed by the grade crossing elimination at its easterly end where it made a " T " intersection with North Avenue before the elimination of the grade crossing on North Avenue.

26. *That prior to the closing of the westerly end of Erie Street Extension customers of the claimant had easy access from North Avenue to the store and feed mill of claimants which were located on the north side of Erie Street extension.*

27. That the encroachment of the stairway mentioned in Finding of Fact No. 22 is part and parcel of the closing of Erie Street Extension at its westerly terminus.

28. *That following the closing of the westerly end of Erie Street Extension " access of a sort " was left available from North Avenue to the store and feed mill of claimants which were located on the north side of Erie Street Extension over a street known as West Avenue, said Erie Street Extension being connected with said West Avenue by a driveway referred to as the " cut-off ".*

28-a. *That said " cut-off " is very sharp and on a descending grade.*

28-b. *That said " cut-off " is too narrow for trucks weighing a ton and a half or more to pass each other.*

28-c. *That as bearing solely on the question of ingress and egress it is found that prior to the closing of the westerly end of Erie Street Extension over 90% of claimants' business was transacted with farmers who called at the feed mill for their purchases, and that an average of fifty customers called there daily.*

28-d. *That as bearing solely on the question of ingress and egress it is found that since the commencement of construction the delivery system of claimants at their door has been almost completely reversed, and they are now compelled to deliver over 90% of their merchandise to their customers.*

28-e. *That the closing of Erie Street Extension at its westerly end where it made a " T " intersection with North Avenue before its closing cut off claimants' property from all other and suitable means of ingress and egress.*

28-f. *That claimants suffered substantial damages by reason of such change of access.*

29. That the damages sustained by claimants by reason of the appropriation of the perpetual easement described herein in and to the .004 acres owned by them is the sum of $100.

30. *That claimants have sustained consequential damages by reason of the closing of the westerly end of Erie Street Extension.*

31. *That claimants' real estate experts in testifying made no mention of the storage plant on Delphine Street and allocated no damages in their testimony as to damages resulting to it by reason of the closing of the westerly end of Erie Street Extension and/or of the closing of Delphine Street.*

32. *That claimants' feed mill and property located on the north side of Erie Street Extension as of the time of and immediately prior to the appropriation of the perpetual easement herein and of the closing of the westerly end of Erie Street Extension was of the reasonable market value of $22,000.*

33. *That immediately following the appropriation of the perpetual easement herein and the closing of the westerly end of Erie Street Extension, claimants' feed mill and property located on the north side of Erie Street Extension was of the reasonable market value of $11,000.*

34. *That claimants' total damages herein amount to the sum of $11,000 which item comprises all damages for the appropriation of the perpetual easement in and to the .004 acre of claimants' land amounting to the sum of $100 (Finding of Fact #29), and consequential damages in the sum of $10,900 to claimants'*

feed mill and property resulting solely from the closing of the westerly end of Erie Street Extension.

35. That the court had viewed the premises involved herein prior to making its decision dated August 30, 1951, and that it again viewed the premises accompanied by claimants' attorney and by a representative of the State of New York following the retrial herein.

36. That it was stipulated by the parties herein on the retrial (Stipulation " D " supra) that Mabel L. Holmes, as executrix under the last will and testament of Theodore L. Holmes, deceased, be and she is hereby substituted as claimant herein in place and in stead of the deceased claimant, Theodore L. Holmes, and that the title of the action be amended accordingly.

That when reference is made in these findings of fact to " claimants " in connection with dates prior to the death of Theodore L. Holmes, it is intended to mean the original claimants who filed the claim, i.e., Robert W. Relyea and the deceased claimant, Theodore L. Holmes, the latter now represented herein by the executrix under his last will and testament as is set forth in the amended title.

### Conclusions of Law

1. That the claim of the claimants herein has been duly filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination.

2. That claimants, Mabel L. Holmes, as executrix under the last will and testament of Theodore L. Holmes, and Robert W. Relyea are entitled to recover judgment against the State of New York in the sum of $11,000 with interest thereon from June 25, 1947, to December 25, 1947, and from May 31, 1949, the date of the filing of the claim herein, to the date of entry of judgment.

Let judgment be entered accordingly.